# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00546-CV

**Robert Morris, Appellant**

**v.**

**Michelle Christine Barnes and Christopher Kent Barnes, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. FM000787, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After a jury trial, Robert Morris's parental rights to his biological child, T.K.M., were terminated. His former spouse, Michelle Barnes, and her husband, Christopher Barnes, sued to terminate Morris's parental rights solely on the basis of his failure to support the child. *See* Tex. Fam. Code Ann. § 161.001(1)(f) (failure to support in accordance with ability for one year ending withing six months of filing of petition). On appeal, Morris contends that the evidence is legally and factually insufficient to support the termination. We will reverse the trial court's judgment.

### Factual and Procedural Background

T.K.M. was born September 7, 1990. The parties separated in July 1994 and divorced in October 1994. In the divorce decree, Morris was ordered to pay child support in the amount of

$200.00 per month and to provide health insurance. At the time he met Michelle, appellant was on parole from the revocation of his ten-year probation for forgery. His parole lasted through the date of their divorce. During their four-year marriage, appellant was incarcerated on three separate occasions for drug-related parole violations. Shortly after the divorce, appellant was reincarcerated for probation violation stemming from a theft conviction that occurred after the parties separated. In December 1998, appellant was jailed for driving while intoxicated. At the time of trial in August 2002, appellant was incarcerated for theft (state jail felony). During the period from August 1998 until July 2000, appellant paid child support as follows: $46.15 in September 1998, $100 in May 1999, $276.90 in December 1999, $184.60 in January 2000, and $92.30 in February 2000. He was in jail at least during December of 1998, January, February, March, April, and May 1999.

Michelle and her current husband brought a petition to terminate Morris's rights based only on the ground of failure to support. Although they attempted to amend their pleadings on the day of trial to allege grounds under family code section 161.001(Q), the court denied leave to amend.[1] Trial was to a jury, which found in favor of terminating Morris's rights. In two issues on appeal, Morris challenges the legal and factual sufficiency of the evidence to support the termination.

---

[1] This ground for termination is based on the parent's knowingly engaging in criminal conduct that has resulted in the conviction of an offense and confinement and inability to care for the child for not less than two years from the date of filing of the petition. Tex. Fam. Code Ann. § 161.001(Q).

**Discussion**

The natural right existing between parents and their children is of constitutional dimension. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994); *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex. 1976). Appellant's parent-child relationship with his child is a fundamental liberty interest protected by the Fourteenth Amendment. *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Lassiter v. Department of Soc. Servs. of Durham County*, 452 U.S. 18, 27 (1981). The integrity of the family unit has found protection in the Due Process and Equal Protection Clauses. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Termination of the parent-child relationship is final and irrevocable and divests for all time the parent and child of all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Because termination of parental rights is such a drastic remedy and is of such weight and gravity, due process requires the petitioner to justify termination by the heightened burden of proof of "clear and convincing evidence." Tex. Fam. Code Ann. § 161.001 (West 2002); *In re G.M.*, 596 S.W.2d at 847. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2002); *In re C.H.*, 89 S.W.3d 17, 19-25 (Tex. 2002); *In re G.M.*, 596 S.W.2d at 847. This standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable-doubt standard of criminal proceedings. *See In re G.M.*, 596 S.W.2d at 847.

3

The heightened "clear and convincing evidence" burden of proof alters the appellate legal sufficiency standard of review. *In re J.F.C.*, 96 S.W.3d 264-65 (Tex. 2002); *In re C.H.*, 89 S.W.3d at 25. This is because our traditional no-evidence standard of review does not adequately protect the parents' constitutional interests. *In re J.F.C.*, 96 S.W.3d at 264-65. The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed. *Id.* at 266.

In conducting our legal sufficiency review in termination cases, we must review all the evidence in the light most favorable to the finding to determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the finding was true. *Id.* at 265-66. In other words, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* at 266. We must also disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding, as this could skew the analysis of whether there is clear and convincing evidence. *Id.* We must consider undisputed evidence even if it does not support the finding. *Id.* Following this review, if we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the allegations. *In re C.H.*, 89 S.W.3d at 25. In determining

4

whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*. An appellate court should specify its reasons for concluding that a reasonable trier of fact could not have attributed disputed evidence in favor of the finding. This standard retains the deference an appellate court must have for the fact finder's role. *In re C.H.*, 89 S.W.3d at 26.

### *Failure to Support*

Under section 161.001(1)(F) of the family code, the parent must (1) fail to support the child in accordance with his ability; (2) during a period of one year ending within six months of the filing of the petition to support a termination order. The twelve-month period of non-support must be a period of twelve consecutive months. *Brokenleg v. Butts*, 559 S.W.2d 853, 856 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.); *In re T.B.S.*, 601 S.W.2d 539, 542 (Tex. Civ. App.—Tyler 1980, no writ). It may begin no earlier than eighteen months before the petition to terminate is filed. *Yepma v. Stephens*, 779 S.W.2d 511, 512 (Tex. App.—Austin 1989, no writ). The ability to pay support must exist each month during the twelve-month period, and the burden is on the person seeking termination to prove by clear and convincing evidence that the person had the ability to pay during each of the months. *In re Z.W.C.*, 856 S.W.2d 281, 283 (Tex. App.—Fort Worth 1993, no

writ).  If the parent does support the child in accordance with the parent's ability for one or more of the twelve months in question, there is no ground for termination for non-support.  *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976).

In *Spratlan*, the court considered a fact situation in which the parent paid some support in four of the twelve months under consideration and was living at a poverty level during the entire one-year period being used as the period of nonsupport to terminate her rights.  *Id.* at 351.  The court reversed the termination, concluding that there was no evidence to support the findings or the conclusion that the appellant failed to support her child in accordance with her ability to pay for the period of time required by the family code.  *Id*. at 352.  The court noted that "one year does not mean eight months."  *Id*. at 351.  The court noted the difference between suits for conservatorship, possession, or support and those for termination.  The former decrees may be modified or changed, but the parent still retains some rights in the child.  Conversely, a termination decree is "complete, final, irrevocable."  *Id.* at 351-52.  "The difference in those proceedings justifies the caution with which courts have characteristically considered termination cases."  *Id*. at 352.

The dissent asked:  "Does the majority intend to hold that if a parent fails to make any support payments for eleven months and succeeds in forwarding a financial contribution on the twelfth month, that the running of the one-year period of nonsupport has been tolled and termination may not be allowed?"  *Id.* at 354.  The dissent interpreted the majority opinion as meaning that if a parent capable of providing support during the twelve-month period from January 1, 1975 to December 31, 1975 paid no payments for eleven months but paid in until December, then a one-year period of nonsupport did not exist.  *Id*.

This case would appear to fit the hypothetical posed by the dissent in *Spratlan*; from October 1, 1998 until November 30, 1999, only one support payment was made. However, two elements factor into a conclusion of nonsupport—the ability to pay and whether payment was made. In the instant case, the record lacks evidence concerning ability to pay.[2]

***Ability to Pay***

In *Yepma v. Stephens*, this Court held that in addition to establishing evidence of nonpayment for twelve consecutive months, "the statute [allowing termination] also requires establishing that the parent had the ability to pay child support during the relevant period." 779 S.W.2d at 512. Yepma was incarcerated during the relevant period and did not pay his child support as ordered in the divorce decree. The court noted that there was no evidence that Yepma could pay child support while incarcerated, that he received income of any sort during this period, or that he owned any assets other than an inmate trust fund containing a twelve-cent credit. *Id.* The court put the burden on the petitioner to establish ability to pay. *See also In re Z.W.C.*, 856 S.W.2d at 283.

In contrast, the court in Corpus Christi held that inability to pay child support under a court order is an affirmative defense that must be raised by the party defending the allegation of failure to pay support. *In re R.R.F.*, 846 S.W.2d 65, 68 (Tex. App.—Corpus Christi 1992, no writ). The court compared a termination proceeding to a contempt proceeding for failure to pay child

---

[2] We note that the instant case is not one in which the parent's ability to pay support existed during some months of the applicable period but the parent made no payments at all during the applicable twelve-month period. *See McGowen v. State*, 558 S.W.2d 561, 565 (Tex. Civ. App.—1977, writ ref'd n.r.e.). When appellant was employed, he appeared to have attempted to make payments, although the record is unclear as to his exact periods of employment.

7

support because the non-paying parent is in jeopardy of either loss of parental rights or incarceration. The court then held that because inability to pay is an affirmative defense in a contempt proceeding it is an affirmative defense in a termination proceeding. *Id.*; *see also In re J.M.M.*, 80 S.W.3d 232, 250 (Tex. App.—Fort Worth 2002, pet. denied), *disapproved of on other grounds, In re J.F.C.*, 96 S.W.3d 256, 267 n. 39.

However, lack of ability to pay is made an affirmative defense by statute in a contempt proceeding. Tex. Fam. Code Ann. § 157.008 (c) (West 2000). No such language is found in section 161.001 dealing with termination and an element of termination is failure to pay in accordance with ability. Further, as noted in *Spratlan*, the consequences of termination are permanent, unlike the consequences of modification and enforcement proceedings, which makes an analogy between the two fairly weak. One can purge contempt by payment; once termination is final, there is no recourse. Further, this Court's case in *Yepma* involved a court order for child support, and this Court did not hold inability to pay to be an affirmative defense but treated it as an element of the plaintiff's case.

Because the trial court appeared to have proceeded on the theory that inability to pay was an affirmative defense that had not been plead, when Morris attempted to offer evidence concerning inability to pay,[3] the Barneses objected and were sustained. Ultimately, the only evidence concerning ability to pay was appellant's testimony that when he was not incarcerated, he could have

---

[3] Appellant proceeded at trial under an affidavit of inability to pay which showed $35.00 in his trust fund account, about $50 per month going into his trust fund, no other assets, and $1000.00 in debt. Counsel was appointed for appellant at trial and appeal.

obtained a job and paid at least some support. However, that testimony only concerns periods when he was not incarcerated; there is still no twelve-month period of ability to pay and non-payment.

### Conclusion

In conclusion, there is no evidence of any consecutive twelve-month period in which Morris both had the ability to pay and failed to pay. There is no consecutive twelve-month period uninterrupted by a payment of some kind. We conclude that no reasonable fact finder could have formed a firm belief that the matter to be proved, the requisite period of non-support, was true. *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold the evidence legally insufficient, reverse the trial court's judgment, and render judgment denying the termination. *Id.*

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Rendered

Filed:  April 15, 2004

9