NO. 07-06-0008-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 23, 2006
_____

IN THE INTEREST OF T.B.D., A CHILD
_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 51976A; HONORABLE HAL MINER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Eric Maiwald, acting pro se, appeals an order terminating his parental rights to his child T.B.D. The proceeding was initiated by the child's mother Stacey Kaye Moon,[1] and was tried to the bench in December 2005. We will reverse the order of termination and remand the cause for a new trial.

Maiwald presents seven issues. We find his fifth issue, by which he challenges the factual sufficiency of the evidence supporting termination, dispositive of the appeal.

_____

[1] Appellee Stacey Kay Darland Moon married Chris Moon some two years before the December 2005 hearing on termination. Although some of the events discussed in this opinion occurred before her marriage, we refer to her throughout by her married name.

Moon's pleadings sought termination on four grounds, those set forth in Family Code subsections 161.001(1)(C), (F), (H) and (Q), and alleged that termination was in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (Vernon 2002). The trial court's termination order states the court found all four of the grounds alleged supported termination. The termination may be affirmed if any of the four grounds alleged, and the allegation concerning the best interest of the child, were supported by clear and convincing evidence. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (Vernon 2002); *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005).

Accordingly, appellate review of the factual sufficiency of evidence supporting a termination finding must determine and address whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction about the truth of the allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Our review must encompass the entire record. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

Moon's appellate brief, and the trial court's findings of fact and conclusions of law, indicate that Moon focused on subsection 161.001(1)(Q), which provides for termination of parental rights when a parent knowingly engages in criminal conduct resulting in his conviction of an offense, and confinement or imprisonment and inability to care for the child for "not less than two years from the date of filing the petition." Courts of appeals initially differed in their applications of the statutory language, some finding the requisite period to

be the two years ending with the filing date, others reading the language to refer to the two-year period beginning with the date of the petition's filing. *See In re A.V.*, 133 S.W.3d at 359 (listing cases). The supreme court held that the language is to be applied prospectively. *Id.* at 359-60.

Moon filed her petition to terminate Maiwald's parental rights on August 30, 2005. It is undisputed that Maiwald was convicted of aggravated assault with a deadly weapon and has been incarcerated in the Department of Criminal Justice since January 2003. He remained incarcerated at the time of the termination hearing, and testified he would be discharged from prison in October or November 2006. No evidence shows that Maiwald's incarceration will extend for two years from the initiation of the termination proceeding. On this record, his parental rights cannot be terminated under subsection 161.001(1)(Q). *In re A.V.,* 113 S.W.3d at 360.

Subsection 161.001(1)(F) authorizes termination of parental rights of a parent who fails to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition for termination. The one-year period means twelve consecutive months, and there must be proof the parent had the ability to pay support during each month of the twelve-month period. *In re R.M.*, 180 S.W.3d 874, 878 (Tex.App.–Texarkana 2005, no pet.); *In re Z.W.C.*, 856 S.W.2d 281, 283 (Tex.App.–Fort Worth 1993, no writ). Here, the relevant time would be a twelve-month period beginning no earlier than March 3, 2004. As noted, Maiwald was incarcerated during that entire time. He testified he had no ability to provide for his daughter while in

3

prison. Moon made essentially the same statement. The trial court's conclusions of law state that Moon proved by clear and convincing evidence that Maiwald did not have the ability to support the child. Without evidence of his ability to support the child during the statutory period,[2] termination of Maiwald's parental rights cannot be supported under subsection 161.001(1)(F). *See Yepma v. Stephens*, 779 S.W.2d 511, 512 (Tex.App.–Austin 1989, no writ) (applying rule).

To support termination under subsection 161.001(1)(C), Moon was required to prove that Maiwald voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months. This subsection is among those commonly characterized as involving the abandonment of a child by a parent. *See, e.g.*, Sampson & Tindall's Texas Family Code Annotated, Comment to Section 161.001 at 887 (August 2005 ed.). Like the one-year period under subsection 161.001(1)(F), the six-month period referred to in this subsection is a period of at least six consecutive months. *In re D.L.N.*, 958 S.W.2d 934, 937 (Tex.App.–Waco 1997, pet. denied), *disapproved on other grounds by In re C.H.*, 89 S.W.3d 17 (Tex. 2002), and *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002).

The trial court's findings of fact and conclusions of law include several statements addressing Maiwald's failure to provide support for T.B.D., but do not address directly the subjects of his voluntarily leaving the child or remaining away. During her testimony,

---

[2] Incarceration, of course, does not necessarily equate to an inability to support one's child. Here, though, all the evidence, and the court's finding, are to the effect that Maiwald had no ability to support T.B.D. during his incarceration.

Moon's mother Debra Darland was asked about the relationship Moon and Maiwald had before he went to prison. She described it as an "[o]ff and on relationship where they'd kind of break up and get back together." Evidence showed they began dating in June 1999.[3] In late October of that year, they learned she was pregnant. She terminated her relationship with Maiwald in December because of his violent behavior. When T.B.D. was born on July 2, 2000, Maiwald and his mother came to the hospital to see the baby. The couple reconciled after the child's birth. Moon explained, "[Maiwald's] mother called me and we started talking and me and [Maiwald] started talking and we got back together." After the reconciliation, Moon said, she and Maiwald were together "off and on for about a year." Moon said they did not live together during that time, but the evidence nevertheless does not permit identification of a six-month period during which Maiwald remained away from T.B.D. prior to the expiration of the year-long reconciliation.

At this point the light grows dim on this subject. The evidence concerning Maiwald's remaining away from T.B.D. after the reconciliation was over but before Maiwald entered prison is scant and uncertain. Moon's testimony did not directly address that period of time. While testifying about Maiwald's violence toward her, Moon agreed that his violence was one of the reasons she could not stay with him, but the testimony was not addressed to any particular time during their relationship and she did not say that Maiwald stayed away. Darland's testimony comes closest to addressing the issue. She testified that after the year-long reconciliation, Maiwald "never came by." Under cross-examination she

_____

[3] It appears that Moon resided at her parent's home throughout her relationship with Maiwald.

5

acknowledged Maiwald had made a visit. Giving due regard to the fact finder's discretion to believe or disbelieve statements of witnesses,[4] in light of the entire record we nonetheless find Darland's brief and contradictory statements on the subject an insufficient basis to support a firm belief or conviction that Maiwald abandoned T.B.D. and remained away from her for a period of six consecutive months.

On appeal Moon quotes language from this court's opinion in *In re D.S.A.*, 113 S.W.3d 567 (Tex.App.–Amarillo 2003, no pet.), in which we cited evidence the appellant had voluntarily committed acts that resulted in his re-incarceration, as a part of the evidence supporting termination in a constructive abandonment case under subsection 161.001(1)(N). While a parent's imprisonment can be a factor in abandonment cases, it is not conclusive. *In re B.T.*, 954 S.W.2d 44, 49 (Tex.App.–San Antonio 1997, pet. denied). Moreover, Moon acknowledged, under questioning by the ad litem, that Maiwald had attempted to make contact from prison through correspondence. We conclude Maiwald's incarceration does not render sufficient the otherwise-insufficient proof of the remaining away requirement of subsection 161.001(1)(C). *Cf. In re B.T.*, 954 S.W.2d at 49-50 (appellant admitted he made no attempt to contact child during long, identified periods of time).

The fourth ground on which termination was based, subsection 161.001(1)(H), requires proof that the parent "voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy . . . ." As

---

[4] *In re T.N.*, 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2005, no pet.).

noted, Moon testified she terminated her relationship with Maiwald in December 1999 during her pregnancy with T.B.D.[5] She and her mother both also testified that Darland had their home telephone number changed to keep Maiwald from contacting them. Asked about changing the telephone number, Darland said, "That's true because he wouldn't leave us alone." Elsewhere in their testimony, Moon and Darland gave affirmative responses to questions asking whether Maiwald abandoned Moon. The more detailed testimony concerning the circumstances of their separation during the pregnancy, however, coming from the same witnesses, was to the contrary.[6] Again, in light of the entire record, we find that a reasonable fact finder could not have disregarded these witnesses' more definitive testimony on the issue of abandonment during the pregnancy in favor of their general responses, and find the evidence supporting this element of subsection 161.001(1)(H) factually insufficient. *J.F.C.*, 96 S.W.3d at 266.

Concluding that the record does not contain factually sufficient evidence supporting a finding Maiwald committed the actions described in any of the four subsections alleged, we sustain his fifth issue. The order terminating Maiwald's parental rights is reversed, and the cause is remanded for a new trial.

James T. Campbell
Justice

---

[5] As with the remaining away element of subsection 161.001(1)(C), findings of fact concerning the abandonment element of this ground are absent from the trial court's findings of fact and conclusions of law.

[6] We do not suggest that Moon and her parents were not justified in taking these actions. To the contrary, Moon's testimony concerning Maiwald's violence toward her may well have justified them, but that is not the question before us.