

NUMBER 13-09-00522-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF L.J.N., A MINOR CHILD

On appeal from the 117th District Court
of Nueces County, Texas.

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Opinion by Justice Rodriguez**

Appellant L.N. challenges the trial court's termination of his parental rights to L.J.N., a minor child. *See* TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2010). By two issues, L.N. argues that no evidence, or in the alternative, insufficient evidence, supported the trial court's findings that L.N. had failed to support L.J.N. in accordance with his ability. We reverse and render.

# I. BACKGROUND

Since December 2006, Ted Ike Stanfield, appellee, and Ann Whitley, L.J.N.'s great-uncle and grandmother, have been the joint managing conservators of L.J.N. L.N. is L.J.N.'s biological father and was named possessory conservator. L.N. was ordered to pay child support in the amount of $295 per month. L.N. made three child support payments: $204.24 on April 23, 2007; $272.32 on May 8, 2007; and $272.32 on June 4, 2007. All three payments were withheld from L.N.'s paycheck.

In May 2007, L.N. was arrested for drug possession. He was convicted of the charged offense and sentenced to a term of incarceration that began in June 2007. He remained incarcerated throughout the following proceedings in the trial court.[1]

On July 10, 2008, Stanfield filed his original petition to terminate L.N.'s parental rights and adopt L.J.N. In his petition, Stanfield alleged that L.N. failed to support L.J.N. "in accordance with his ability during a period of one year ending within six months of the date of the filing of this petition." Stanfield also alleged that termination of the parent-child relationship between L.N. and L.J.N. was in the best interest of the child.

L.N., acting pro se, answered Stanfield's petition, requested the appointment of an attorney, and because he was incarcerated at the time, moved for a bench warrant so that he could be present for any hearing on the matter. L.N. also filed two documents titled "Declaration of Inability to Pay Cost"; one was filed on August 9, 2008, and one was filed August 25, 2008. In both documents, L.N. stated that he was "unable to pay the Court costs in this civil action" and declared, in relevant part, that: "I have no source of income or spousal income"; "I currently have $0 credited to me in the Inmate Trust Fund"; "[d]uring

---

[1]The record does not indicate whether L.N. remains incarcerated as of the date of this opinion.

my incarceration in the Texas Department of Criminal Justice I have received approximately $10.00 per month as gifts from relatives and friends"; and "[m]y monthly expenses are approximately $9.00." At the conclusion of the documents, L.N. "verif[ied] and declare[d] under the penalty of perjury that the foregoing statement[s] are true and correct." Counsel was thereafter appointed for L.N.

On February 12, 2009, the trial court held its first hearing on the termination petition. L.N. appeared by telephone. Both Stanfield and L.N. testified. Stanfield testified that L.J.N. came to live with him when she was three years old.[2] He stated that she was now six years old and had lived with him continuously since December 2006. Stanfield testified that L.N. had made three child support payments; the disbursement receipts from the office of the attorney general for those three payments were admitted into evidence. L.N. testified that he had been continuously incarcerated since May 2007, and made no support payments since he has been in prison. He testified that, aside from twenty to thirty dollars he received from his family for his commissary fund, he has had no source of income since his incarceration. He testified that he had no property to sell to earn funds to provide support for L.J.N., was unable to borrow money, and has had no opportunity to work for pay while he was in prison. The trial court then took the case under advisement on the statutory ground for termination, requesting that the parties find and deliver to the court case law regarding the effect of L.N.'s incarceration on his ability to pay support.[3]

---

[2]L.J.N.'s biological mother is deceased.

[3]After the first hearing, Stanfield amended his petition to add an additional statutory ground for termination. In his amended petition, in addition to the original failure-to-support ground, he alleged that L.N. "knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of this Petition." *See* TEX. FAM. CODE ANN. § 161.001(1)(Q) (Vernon Supp. 2010). However, because the trial court terminated L.N.'s parental rights on the basis of the failure-to-support ground alone, we do not address this additional ground on appeal.

On July 20, 2009, the trial court held a second hearing on the termination petition. L.N. again appeared by telephone. Stanfield asked the trial court to take judicial notice of its file and the evidence it admitted at the previous hearing; the court granted this request. L.N. testified that he had—several months after the February 12, 2009 hearing—received thirty dollars from his mother. L.N. also testified that he had recently made arrangements with the office of the attorney general to withhold twenty percent of whatever funds are put into his commissary account for support for L.J.N. As of the date of the current hearing, however, no funds had been extracted from L.N.'s account and transferred to Stanfield for L.J.N.'s support.

In closing, Stanfield argued, in part, that:

L.N. has filed affidavits with the Court, pursuant to his indicating his indigency. And in those affidavits he indicated a monthly income, although be it a small income. He testified similarly, that he has received money while in jail. To-date, since June of '07, he has provided none of that money for the support of his child. As per our trial brief the obligation is not to support the child as ordered by the Court, but rather, to support the child commensurate with your ability, which we believe would be 20 percent of whatever money he was receiving. He provided zero percent of the money he received as gifts while he was incarcerated. . . . We believe that constitutes a basis for terminating his parental rights.

Counsel for L.N. argued that Stanfield failed to produce evidence that L.N. received money and had the ability to pay support "each and every month" of the statutory twelve-month period.

After argument concluded, the trial court made the following finding:

I am going to find that [L.N.] has failed to support his child in accordance with his ability for the period of . . . June of '07, until the present time, and in accordance with the statute . . . as a condition for involuntary termination. And I am going to find that it is in the best interests of this child that the parent/child relationship be terminated between [L.N.] and the child . . . and that is [sic] the grounds that I find for termination.

4

The trial court then ordered termination of the parental relationship between L.N. and L.J.N. and granted the adoption of L.J.N. by Stanfield. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.–Corpus Christi 2006, no pet.). "Consequently, termination proceedings must be strictly scrutinized, and 'involuntary termination statutes are strictly construed in favor of the parent.'" *In re D.S.P.*, 210 S.W.3d at 778 (quoting *Holick*, 685 S.W.2d at 20).

Due process requires that termination be supported by clear and convincing evidence. *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.–El Paso 2007, no pet.) (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)); *In re D.S.P.*, 210 S.W.3d at 778; *see* TEX. FAM. CODE ANN. § 161.001. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re E.M.E.*, 234 S.W.3d at 73. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

In reviewing the legal sufficiency of the evidence supporting parental termination, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have "formed a firm belief or conviction about the truth of the matter on which the movant in a termination proceeding bore the burden of

5

proof." *In re D.S.P.*, 210 S.W.3d at 778 (citing *In re J.F.C.*, 96 S.W.3d at 266). We must assume that the fact finder resolved disputed facts in favor of its finding if it was reasonable to do so and must disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *Id.*; *In re E.M.E.*, 234 S.W.3d at 73. "This does not mean we must disregard all evidence that does not support the finding, but if we determine that no reasonable fact finder could have formed a firm belief or conviction that the matter to be proven is true, then the evidence is legally insufficient." *In re E.M.E.*, 234 S.W.3d at 73.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief about the truth of the matter on which the movant bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2005); *In re T.B.D.*, 223 S.W.3d 515, 517 (Tex. App.–Amarillo 2006, no pet.). If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

Before terminating parental rights, the trial court must find (1) that the parent committed an act prohibited by section 161.001(1) of the family code, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re N.A.F.*, 285 S.W.3d 113, 115 (Tex. App.–Waco 2009, no pet.). The fact finder must find that both elements are established by clear and convincing evidence; proof of one element does not

6

relieve the movant of the burden of proving the other. *In re N.A.F.*, 282 S.W.3d at 115-16 (citing *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976)) (other citations omitted).

Here, the only statutory ground under which L.N.'s rights were terminated was section 161.001(1)(F), which provides that termination may be ordered if the trial court finds by clear and convincing evidence that the parent "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the [termination] petition." TEX. FAM. CODE ANN. § 161.001(1)(F). One year means twelve consecutive months, and there must be proof the parent had the ability to support during each month of the twelve-month period. *In re N.A.F.*, 282 S.W.3d at 116; *In re E.M.E.*, 234 S.W.3d at 72; *In re T.B.D.*, 223 S.W.3d at 518; *In re D.S.P.*, 210 S.W.3d at 779; *In re R.M.*, 180 S.W.3d 874, 878 (Tex. App.–Texarkana 2005, no pet.). "The burden of proof is on the party seeking termination to prove by clear and convincing evidence that the parent had the ability to pay during each of the months." *In re N.A.F.*, 282 S.W.3d at 116 (citing *Morris v. Barnes*, No. 03-02-00546-CV, 2004 WL 792201, at *3 (Tex. App.–Austin Apr. 15, 2004, no pet.) (mem. op.) (citing *In re Z.W.C.*, 856 S.W.2d 281, 283 (Tex. App.–Fort Worth 1993, no writ))).

### III. DISCUSSION

By his first issue, L.N. argues that the evidence was legally insufficient to support termination of his rights on the relied-upon statutory ground. L.N. complains that the evidence at trial failed to establish that he had the ability to pay support for L.J.N. for each of the twelve months of the period considered by the trial court. Stanfield responds that L.N.'s sworn assertions in his declarations of inability to pay costs that he received ten dollars a month from family or friends suffice to prove that he had the ability to pay at least

7

a nominal amount in support of L.J.N. Stanfield argues that these sworn assertions conflict with L.N.'s testimony at trial that he had no source of income or ability to pay support and that, on appeal, the reviewing court should not second-guess the trial court's determination on this conflicting evidence.

Stanfield bore a heavy burden to establish by clear and convincing evidence that L.N. had the ability to pay support during each month of the twelve-month period considered by the trial court. *See In re N.A.F.*, 282 S.W.3d at 115-16. In attempting to satisfy that burden, the only evidence advanced by Stanfield was L.N.'s declarations of his inability to pay the costs associated with defending against the termination petition, in which L.N. stated that he "received approximately $10.00 per month as gifts from relatives and friends."[4] We do not believe this declaration alone was legally sufficient to support termination under the heightened burden required in these cases.

In order to conclude that L.N. had the financial ability to make support payments to L.J.N., Stanfield asks this Court to rely on the very documents L.N. filed with the trial court to prove his indigence, i.e., his inability to pay.[5] *See Mayfield v. Smith*, 608 S.W.2d 767, 770 (Tex. Civ. App.–Tyler 1980, no writ) (rejecting argument by appellees "that appellant, while confined in prison, could have sent for child support part of such funds as were sent to him by his family for toilet articles not furnished by the State" and because there was no other evidence of ability to pay, the evidence was insufficient to support the trial court's finding in that regard). No other evidence was offered by Stanfield of L.N.'s ability to pay support from June 2007 to the date of the second hearing, which was the period of non-

---

[4]We note that, in the same declaration, L.N. also states that his monthly expenses are nine dollars.

[5]*See, e.g., Tuck v. State*, 215 S.W.3d 411, (Tex. Crim. App. 2007) (defining "indigent defendant" as one who cannot pay or give security for the record) (citing TEX. R. APP. P. 20.2).

support considered by the trial court in its findings. Aside from the statements in L.N.'s indigency declarations, the only evidence in the record regarding L.N.'s ability to pay child support is L.N.'s testimony that he has had no source of income since his incarceration, he has no property to sell to earn funds, he was unable to borrow money, and he has had no opportunity to work for pay while in prison. Although L.N. did testify that he has received twenty to thirty dollars from friends and relatives for his commissary fund, there was no testimony or other evidence that he received that assistance regularly or consistently, and as such, we do not find it to be evidence of his ability to pay support during each month of the relevant twelve-month statutory period. *See In re E.M.E.*, 234 S.W.3d at 73 (holding that the petitioner failed to prove ability to pay for twelve consecutive months where appellant testified that "he had not paid any child support as a result of his incarceration," that "[h]e did not have any income while in prison[,] and received only $20 a month from his family for personal hygiene products"); *see also In re N.A.F.*, 282 S.W.3d at 116 (holding that there must be proof of ability to support during each month of the twelve-month period); *In re E.M.E.*, 234 S.W.3d at 72 (same); *In re T.B.D.*, 223 S.W.3d at 518 (same); *In re D.S.P.*, 210 S.W.3d at 779 (same); *In re R.M.*, 180 S.W.3d at 878 (same).

It is our obligation to strictly scrutinize termination proceedings and strictly construe the statute in favor of the parent. *In re D.S.P.*, 210 S.W.3d at 778 (citing *Holick*, 685 S.W.2d at 20). Thus, even viewing the evidence in the light most favorable to the trial court's finding, we cannot conclude that it was reasonable for the court to resolve the disputed facts surrounding L.N.'s ability to pay in favor of termination. *See id.* (citing *In re J.F.C.*, 96 S.W.3d at 266-67); *see also In re E.M.E.*, 234 S.W.3d at 73; *Mayfield*, 608

9

S.W.2d at 770. To resolve the dispute in favor of termination, the trial court used the very documents that L.N. filed to show his inability to pay against him; construing those documents as some statement of ability and then, in the absence of any other evidence, crediting that over L.N.'s testimony at the hearings that he had no ability to make support payments was unreasonable. *See In re E.M.E.*, 234 S.W.3d at 73; *Mayfield*, 608 S.W.2d at 770. Stanfield's burden was a heavy one, and we conclude that he failed to produce clear and convincing evidence in support of the requisite statutory ground to meet that burden. *See In re N.A.F.*, 282 S.W.3d at 115-16 (citing *Holley*, 544 S.W.2d at 370) (holding that the fact finder must find that both the best-interest and statutory elements are established by clear and convincing evidence and that proof of one element does not relieve the movant of the burden of proving the other). In other words, based on L.N.'s declarations of indigency alone, no reasonable fact finder could have formed a firm belief that the matter to be proved by Stanfield—a consecutive twelve-month period in which L.N. both had the ability to pay and failed to pay—was true. *See In re E.M.E.*, 234 S.W.3d at 73. The evidence supporting the only statutory ground for termination was therefore legally insufficient, and the trial court erred in terminating L.N.'s parental rights on this basis. *See id.* L.N.'s first issue is sustained.

## IV. CONCLUSION

We reverse the trial court's order and render judgment denying termination of the parental relationship between L.N. and L.J.N.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 23rd
day of November, 2010.

10